UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | Case No. 14-cr-00567-RMW |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO DISMISS COUNTS TWO AND THREE OF THE INDICTMENT** |
| ROBERT GARY TOLTZIS, | |
| Defendant. | Re: Dkt. No. 28 |

Before the court is defendant Robert Gary Toltzis's Motion to Dismiss Counts Two and Three of the Indictment filed on September 2, 2015. Dkt. No. 28. Defendant contends that the indictment fails to sufficiently allege all of the required elements of 18 U.S.C. § 876(c) for counts two and three. The government filed an opposition, and defendant filed a reply. Dkt Nos. 41, 43. For the reasons set forth below, the court DENIES the motion to dismiss.

**I. BACKGROUND**

On November 12, 2014, the grand jury issued a four-count indictment charging defendant with violating 18 U.S.C. § 876(c).[1] Dkt. No. 1. The indictment alleges that over the span of several

---

[1] "Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication . . . addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not

years, defendant sent threatening correspondences to numerous individuals based on their sexual orientation, national origin, and ethnic background using his e-mail address, the services of anonymous remailers, his printer, and the United States mail. Counts two and three pertain to victim FB and FB's former wife, stating:

> COUNT TWO: 18 U.S.C. § 876(c) (Mailing Threatening Communications)
>
> On or about May 2, 2013, in the Northern District of California and elsewhere, the defendant, ROBERT GARY TOLTZIS, knowingly and willfully caused to be delivered by mail according to the directions thereon, a written communication addressed to FB that contained a threat to injure FB, in violation of Title 18, United States Code, Section 876(c).
>
> COUNT THREE: 18 U.S.C. § 876(c) (Mailing Threatening Communications)
>
> On or about May 2, 2013, in the Northern District of California and elsewhere, the defendant, ROBERT GARY TOLTZIS, knowingly and willfully caused to be delivered by mail according to the directions thereon, a written communication addressed to FB's family that contained a threat to injure FB, in violation of Title 18, United States Code, Section 876(c).

Dkt. No. 1 ¶¶ 21, 23. The facts alleged in the indictment pertaining to counts two and three state:

> 16. On or about May 2, 2013, FB received a threatening letter in the mail at his home located in the District. The letter was addressed to FB, postmarked in San Jose, and listed the sender as DM. The letter was three pages long and included claims that FB was a drug addict, bad husband, and a homosexual. The letter urged FB to kill himself and included a picture of FB. The letter also included a graphic depiction of a sex act as well as racial slurs. This envelope and its contents were printed on TOLTZIS' Dell printer.
>
> 17. FB's former mother-in-law also received a copy of this same letter at her home in Santa Clara County. The letter, postmarked on May 2, 2013, in San Jose, was addressed to FB's former wife, and again listed DM as the sender. The contents of the letter were virtually identical to the aforementioned death threat letter . . . including the call for "death to Iranians," and the assertion that FB should kill himself. This envelope and its contents were printed on

---

more than five years, or both." 18 U.S.C. § 876(c).

1    TOLTZIS' Dell printer.

2   Dkt. No. 1 ¶¶ 16-17.

3   Defendant moves to dismiss counts two and three of the indictment on the grounds that the indictment fails to allege all of the required elements of 18 U.S.C. § 876(c). Specifically, defendant argues that the indictment fails to allege any "threat to injure the person of the addressee or of another." 18 U.S.C. § 876(c). Defendant's position rests on two arguments, namely that: (1) the communications at issue do not constitute "true threats" and (2) the communications at issue do not contain threats directed at a natural person.

## II.   ANALYSIS

### A.   Standard

Pursuant to Rule 7 of the Federal Rules of Criminal Procedure, an indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy. *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009). An indictment that tracks the language of the statute charging the offense is sufficient if it unambiguously sets forth all of the elements necessary to constitute the offense. *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985). In addition, "it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence . . . with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117-18 (1974).

Failure to recite an essential element of the charged offense is a fatal flaw requiring dismissal of the indictment. *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999). Rule 12(b)(3)(B) allows a district court to review the sufficiency of the government's pleadings on a motion alleging such a defect in the indictment. Fed. R. Crim. P. 12(b)(3)(B). A party may raise by pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). In considering a motion to dismiss, the court is limited to the face of the indictment and must accept the facts alleged in the indictment as true. *Winslow v.*

*United States*, 216 F.2d 912, 913 (9th Cir. 1955). An indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied. *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007). With these principles in mind, the court turns to the parties' arguments.

### B. True Threat

A violation of 18 U.S.C. § 876(c) has two elements: (1) the defendant's letter contained a threat to injure, and (2) the defendant knowingly caused the letter to be deposited in the mail. *United States v. De La Fuente*, 353 F.3d 766, 770 (9th Cir. 2003). Threats fall outside the protections of the First Amendment. *Watts v. United States*, 394 U.S. 705, 707 (1969) ("What is a threat must be distinguished from what is constitutionally protected speech."). True threats encompass "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003).

The Ninth Circuit's determination of whether a statement constitutes a threat is governed by a two-prong analysis. The objective prong requires that "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *United States v. Keyser*, 704 F.3d 631, 638 (9th Cir. 2012). Furthermore, in order to be subject to criminal liability for the threat, "the speaker must subjectively intend to threaten." *Id.*; *see also Elonis v. United States*, 135 S. Ct. 2001, 2012 (2015) ("[T]he mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat.").[2]

To dismiss counts two and three of the indictment as a matter of law, the court must

---

[2] The language of the statute at issue in *Elonis* is very similar to the language of the statute that defendant is accused of violating: "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 875(c).

4
14-cr-00567-RMW
ORDER DENYING MOTION TO DISMISS COUNTS TWO AND THREE OF THE INDICTMENT
TN

conclude that no reasonable jury could find that the alleged communications constitute true threats. *See United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013). In other words, the court must find that the communications cannot objectively be interpreted as threats, or that the defendant did not have the subjective intent to threaten. The court need not confine its analysis to defendant's statements alone. Rather, courts consider the entire factual context surrounding the statements as alleged in the indictment. *See, e.g., Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1078 (9th Cir. 2002), *as amended* (July 10, 2002) ("alleged threat must be analyzed in light of its entire factual context to determine whether the recipient . . . could reasonably conclude that it expresses a determination or intent to injure"); *United States v. Bagdasarian*, 652 F.3d 1113, 1123 (9th Cir. 2011) ("As with our analysis of the objective test, we do not confine our examination of subjective intent to the defendant's statements alone").

Defendant contends that the allegations in the indictment are insufficient to establish the "true threats" element required to criminalize a communication under section 876(c). Defendant maintains that while the communications are crude and offensive, they do not evince an intent to kill or injure FB. Defendant asserts that the declaration that FB should kill himself and the statement "death to Iranians" are merely exhortations to third parties, or, alternatively, that they merely express the personal beliefs and desires of defendant. Because the alleged communications contain no explicit threats or language indicating that defendant personally intended to kill or injure FB, defendant argues, the "true threat" requirement is not met.

Defendant distinguishes the case at hand from *United States v. Sutcliffe*, in which the Ninth Circuit held that the defendant's statements constituted true threats in violation of 18 U.S.C. § 875(c)—making interstate threats to injure. 505 F.3d 944, 952 (9th Cir. 2007). The defendant in *Sutcliffe* posted several messages to his website directed toward a process server, including the statements "I will personally send you back to the hell from where you came" and "I will kill you." *Id.* at 951. Defendant contrasts the threats in *Sutcliffe* with the alleged threats here, suggesting that the declaration that FB should kill himself and the statement "death to Iranians"

5

are not explicit enough to show that defendant possessed a subjective intent to kill or injure the subject. *See id.* Defendant's argument misses the mark. Although the messages in *Sutcliffe* are certainly explicit enough to cast them well within the category of true threats, the court does not read *Sutcliffe* as stating a rule which requires true threats to contain explicit language expressing the defendant's intention to injure the subject.

On the contrary, the Supreme Court has held that for a message to constitute a true threat, "[t]he speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Black*, 538 U.S. at 359-60 (quoting *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992)). Instead of requiring that a threat must be explicit, the Ninth Circuit has held that "[t]he fact that a threat is subtle does not make it less of a threat." *Planned Parenthood*, 290 F.3d at 1075. Other circuits have similarly declined to adopt a rule requiring a true threat to contain an explicit expression of the defendant's intention to injure. *See, e.g., United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994) ("An absence of explicitly threatening language does not preclude the finding of a threat under section 876"); *United States v. Turner*, 720 F.3d 411, 425 (2d Cir. 2013) (holding that threats "need be neither explicit nor conveyed with the grammatical precision of an Oxford don"); *United States v. Wheeler*, 776 F.3d 736, 745 (10th Cir. 2015) (concluding that "exhortations are not categorically excluded from the realm of true threats").

Defendant next attempts to analogize the case at hand to *United States v. Bagdasarian*, wherein the Ninth Circuit held that the defendant's statements did not constitute true threats in violation of 18 U.S.C. § 879(a)(3).[3] 652 F.3d at 1123. The defendant in *Bagdasarian* posted several messages to an online message board including the statements "Obama Fk the niggar, he will have a 50 cal in the head soon" and "shoot the nig." *Id.* at 1115. The Ninth Circuit found the

---

[3] "Whoever knowingly and willfully threatens to kill, kidnap, or inflict bodily harm upon . . . a major candidate for the office of President . . . shall be fined under this title or imprisoned not more than 5 years, or both." 18 U.S.C. § 879(a)(3).

6
14-cr-00567-RMW
ORDER DENYING MOTION TO DISMISS COUNTS TWO AND THREE OF THE INDICTMENT
TN

first statement to be predictive in nature and the second statement to be exhortatory, and consequently held that the statements were not true threats because they did not express subjective intent on the part of defendant to take action. *Id*. at 1122-23. Defendant likens the alleged threats in *Bagdasarian* to the alleged threats here, urging the court to follow suit by holding that the declaration that FB should kill himself and the statement "death to Iranians" do not show subjective intent on the part of defendant to take action and thus do not constitute true threats. *See id*. at 1115.

*Bagdasarian* is distinguishable from the instant case because it involved public postings to an online financial message board directed toward no one in particular. *See id*. Here, however, defendant is alleged to have mailed letters directly to the homes of his victims—letters containing the victims' personal information along with photographs of the victims. Due to the extremely personal nature of sending a letter directly to the homes of FB and his family, the court is not willing to rule out the possibility that a reasonable jury could infer from defendant's actions that he possessed the subjective intent to threaten.

Furthermore, the Ninth Circuit has held that "our cases do not require that the maker of the threat personally cause physical harm to the listener." *Planned Parenthood*, 290 F.3d at 1077. "The only intent requirement for a true threat is that the defendant intentionally or knowingly communicate the threat." *Id*. at 1075; *see also United States v. Davis*, 876 F.2d 71, 73 (9th Cir. 1989) ("The only proof of specific intent required to support a conviction under 18 U.S.C. § 876 is that the defendant knowingly deposits a threatening letter in the mails, not that he intended or was able to carry out the threat."); *United States v. Stewart*, 420 F.3d 1007, 1019 n.9 (9th Cir. 2005) ("It is well-settled that a speaker can subjectively intend the speech as a threat even if the speaker never actually intended to carry out the threat.").

Defendant also cites to *United States v. Kelner*, in which the Second Circuit held that "only unequivocal, unconditional and specific expressions of intention immediately to inflict injury may be punished" as true threats. 534 F.2d 1020, 1027 (2d Cir. 1976). However, the court has yet to find a Ninth Circuit case that follows this rule, and there even appears to be disagreement within

7

the Second Circuit as to its applicability. *See Turner*, 720 F.3d at 424 ("[Defendant's] interpretation of *Kelner*—that only communications that facially threaten unequivocal, unconditional, immediate, and specific injury may be prohibited consistent with the First Amendment—is contrary to the Supreme Court's conclusion in *Black*."). The court thus declines to follow the standard set forth in *Kelner*.

Considering the above precedent, along with the entire factual context surrounding defendant's statements as alleged in the indictment, the court declines to rule as a matter of law that no reasonable jury could find that the alleged communications constitute true threats. A reasonable jury could determine that the objective prong of the true threat analysis is met, namely that "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *Keyser*, 704 F.3d at 638. It is also possible that a reasonable jury could infer from defendant's actions and from the context surrounding the statements that defendant sent the communications with the subjective intent to threaten. The question of whether defendant's communications constitute true threats is thus a factual question appropriately left to the jury.

### C.  Natural Person

The court is not persuaded by defendant's argument that the alleged communications do not contain threats directed at a natural person. Defendant asserts that because the statement "death to Iranians" is not directed at a specific natural person, it cannot be penalized under section 876(c). The only case defendant cites in support of his argument, *United States v. Havelock*, 664 F.3d 1284 (9th Cir. 2012) (en banc), dealt with whether threat letters addressed to four media outlets and two websites came within the scope of section 876(c). The Ninth Circuit concluded that Havelock's letters, which were not addressed to particular individuals[4] at the media

---

[4] One of the letters in *Havelock* was actually addressed to a particular individual, but the indictment had only alleged that the letter was addressed to a company. 664 F.3d at 1293 n.6. The court found that the government had waived any argument that the letter in question was addressed to a natural individual by reason of the inclusion of the individual's name in the address on the outside of the package. *Id.*

outlets, did not violate section 876(c) because they were not "addressed to" natural persons: "It simply makes no sense to threaten to kidnap a corporation, or injure 'the person' of a corporation, or talk about a deceased corporation." *Id.* at 1291.

Defendant's reliance on *Havelock* is misplaced because the alleged communications in the instant case were not sent to corporations. Counts two and three both explicitly allege that defendant mailed written communications "addressed to FB" and "addressed to FB's family," all of whom are natural persons. To the extent that defendant argues that the court should examine not only the addresses listed on the letters but also the content of the letters, the court's conclusion does not change. The statement "death to Iranians" could be perceived by a reasonable jury as being a threat to FB if FB is Iranian or if defendant perceived FB as being Iranian. The court thus declines to find as a matter of law that the alleged threats were not directed at a natural person.

### D. Conclusion

The court finds that the indictment is sufficient because it tracks the language of the statute, alleges all the elements of the charged crime, and is accompanied by a detailed statement of factual allegations which adequately informs defendant of the charge and enables him to plead double jeopardy. The specific facts alleged in the indictment are sufficient to withstand defendant's motion to dismiss because a reasonable jury could conclude that the alleged communications constitute true threats and were directed toward a natural person. The government is entitled to present its evidence at trial, including evidence which may lend further context to the statements alleged.

## III. ORDER

For the foregoing reasons, the court DENIES defendant's motion.

**IT IS SO ORDERED.**

Dated: June 27, 2016

_____
Ronald M. Whyte
United States District Judge